IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                                         )<br>            Plaintiff,                      )<br>                                                         )<br>      v.                                          )<br>                                                         )<br>$104,160.00 IN UNITED STATES )<br>CURRENCY,                              )<br>                                                         )<br>            Defendant.                 )<br>_____)  | 8:08CV463<br><br><br><br><br>MEMORANDUM AND ORDER |

This matter is before the court following a bench trial. For the reasons stated on the record on September 21, 2009, as well as the reasons set forth in this Memorandum and Order, the court finds in favor of the claimants and against the plaintiff. The government shall return the $104,160.00 in United States Currency to Brontelle Mosley and Nola Mease-Mosley. The court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

On or about August 28, 2008, officers responded to a home intrusion alarm system on Florence Boulevard in Omaha, Nebraska. When the officers arrived, they found the back door open and a window broken. The officers entered through the basement and then worked their way to the upstairs floors of the house. Three of the four officers testified that they smelled fresh marijuana throughout the house. One officer testified that he only smelled burnt marijuana in one portion of the house. As the officers entered the master bedroom and bathroom, they saw approximately $19,100 laying in a pile on the floor as well as several blunts (marijuana cigars), a user amount, in a cup on a table next to the toilet. Two of the officers left to obtain a search warrant based on the smell of marijuana

and on the large amount of cash on the bathroom floor. Upon receiving the search warrant, the officers found additional cash in the bedroom under a dresser and hidden in a bench next to the bed. In all, the officers found $104,160.00. The money was bundled by amount, rubber-banded, and in baggies. The officers brought in a K-9 that alerted to the money in the bathroom. The search yielded no additional drugs, drug paraphernalia, baggies, twisties, or records of drug activities.

Shortly after the officers arrived at the residence, Mrs. Mosley, the co-owner of the home, arrived. She remained outside until after the initial discovery of the money and the smell of marijuana. Officer Mark Hanner testified that they questioned Mrs. Mosely and she became evasive and did not directly answer their questions regarding the money and smell of marijuana. At that time the officers took Mrs. Mosley inside and she was read her *Miranda* rights. Mrs. Mosely received a citation for marijuana less than one ounce, but the officers later voided the citation. The officers did not detain Mrs. Mosley, and she refused to make a statement and instead asserted her right to counsel. Mrs. Mosley remained outside for the next several hours while the officers executed the search warrant.

At the close of plaintiff's case, the court denied the claimants' motion for a directed verdict. Accordingly, the court required Mr. and Mrs. Mosley to proceed with their case to recover the $104,160.00.

The court finds the Mosleys submitted sufficient credible evidence to establish a legitimate basis for possession of such a large amount of cash. Mr. Mosley admitted that the blunts were his and that he smoked marijuana. He also testified that he had kept cash in his house for a number of years, as that is how he does business. He further testified that he buys houses for pennies on the dollar and flips them for a profit or rents them for

a profit. He also produces music, rents his music studio, and he has concerts in his music studio. He has a car business. Mrs. Mosely testified that she has worked at West Asset Co. for the last six years and makes in excess of $50,000 per year plus significant bonuses. She further testified that her husband works on a cash basis, but she uses a checking account. She gives her husband approximately $200 in cash from each of her paychecks. Mr. Mosley testified that he paid all his bills in cash, including the purchase of houses, real estate taxes, and utilities, and received cash for most of his business ventures, or if he received checks, he converted the checks to cash. Most of the business ventures were substantiated by documentation received at the trial. He also testified that he had a gambling problem.

The Mosleys' testimony was substantiated by other testimony and evidence. *See* e.g., Exs. 1-18; 120; 122-123; 134-142; and 145. Mr. Mosley testified that on August 28, 2008, he owned a number of real estate investments including six lots and seven residential homes. These investments were supported by the Douglas County Assessor's office records. Exs. 101-108. Leigh Horacek testified that he rented from Mr. Mosely and gave him $850 in cash per month. Eddie James Walker, V, testified that he paid Mr. Mosley $550 per month in rent. Mr. Mosley testifed that his mom paid him $550 per month for rental of her house. Mr. Mosley also testified that he purchased a house for $5,000 that was valued at $44,000, and he purchased his own home for approximately $37,000 and it was 4,300 square foot house. Mr. Mosley testified that he had a large heavy safe in his old home, but he had just recently moved into his new house and had been unable to move the safe into his new home. He testified that this $104,160 is his life savings, that he does not trust banks, and that his grandfather had the same practice.

The government also found a dryer sheet hanging in the downstairs closet. Mrs. Mosley testified that there was a sewer smell when they moved into the house because the return air vent comes up by the bathroom. She testified that she saw on TLC that dryer sheets would absorb the bad smell. The court credits this testimony.

Both Mr. and Mrs. Mosley testified that they did not acquire any of this money via drug sales.

## CONCLUSIONS OF LAW

The government bears the initial burden of establishing by a preponderance of the evidence that the money is substantially connected to a criminal offense, in this case, a drug trafficking crime. 18 U.S.C. §§ 983(c)(1) and (3); *see also United States v. $117,920.00 in United States Currency,* 413 F.3d 826, 829 (8th Cir.2005) (government must show substantial connection between currency and drug trafficking). "Circumstantial evidence can be used by the United States to establish its burden of proof." *United States v. $84,615.00 in U.S. Currency,* 379 F.3d 496, 501 (8th Cir. 2004). The government has the initial burden to establish by a preponderance of the evidence that the property is substantially connected to drug crimes/trafficking. *United States v. $124,700.00 in U.S. Currency,* 458 F.3d 822, 826 (8th Cir. 2006). "The government does not have to show evidence of, or trace the money to, a particular transaction." *United States v. U.S. Currency in the Amount of $150,660.00,* 980 F.2d 1200, 1205 (8th Cir. 1992) (citations omitted). Title 18, United States Code, Section 983(d)(1) states:

> An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.

Section 983(d)(2)(A) further defines innocent owner:

> With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term 'innocent owner' means an owner who (i) did not know of the conduct giving rise to the forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

At the close of the government's evidence, the court believed the government's case was weak at best and that the government had not met its burden by a preponderance of the evidence but, if the evidence was unrebutted and taken in the light most favorable to the government, it may have supported a prima facia showing of a connection to illegal drug activity.  This matter being a non-jury trial, the court decided to allow the trial to proceed.  Following the presentation of evidence by the Mosleys, the court ruled in favor of the Mosleys.[1]  The court finds that the government did not prove by a preponderance of the evidence that there was any nexus between the seized funds and illegal drug activity.  Even if the government met its initial burden of showing that the money had a substantial connection to drug activity, the court finds in any event that the Mosleys have met their burden of proving that the cash seized by the government is tied to legitimate earnings and ventures.  The testimony and evidence submitted at trial support the version of facts articulated by the Mosleys.  The government failed thereafter to meet its burden of proof and persuasion beyond a preponderance of the evidence. The circumstantial evidence offered by the government did not even remotely show a connection to drug

---

[1] The court also ruled at the end of the trial that the Mosleys could file a motion for attorneys fees. The court will rule on that motion by separate order.

activity and the $104,160.00 at issue in this case. Accordingly, the court concludes that the government must return the $104,160.00 to the Mosleys.

THEREFORE, IT IS ORDERED that the government is ordered to return the $104,160.00 to Brontelle Mosley and Nola Mease-Mosley. A separate judgment will be filed in conjunction with this Memorandum and Order.

DATED this 5th day of October, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.